IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01756-RBJ-KLM

SHARI L. STRATTON,

    Plaintiff,

v.

UNITED LAUNCH ALLIANCE, L.L.C., a Delaware Corporation doing business as ULA, and
SHELLIE A. AGUILERA, an individual,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Complaint** [#17][1] (the "Motion"). Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a Response [#30][3] in opposition to Defendants' Motion, and Defendants

---

[1] "[#17]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a pro se litigant, nor should the Court "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

[3] As Defendants point out, *Reply* [#32] at 1 n.1, Plaintiff filed two Responses [#30, #31], the second of which was submitted a day after the deadline set by the Court, without explanation. *Minute Order* [#29]. Accordingly, the Court only considers Plaintiff's first Response [#30] in determining the merits of Defendant's Motion [#17]. *See Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (stating that pro se litigants must follow the same procedural rules that govern other litigants).

filed a Reply [#32].  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motion has been referred to this Court for a recommendation regarding disposition.  The Court has reviewed the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#17] be **GRANTED**.

## I. Background

In the Amended Complaint, Plaintiff makes the following allegations.  She asserts that she is permanently disabled within the meaning of the Americans with Disabilities Act of 1990 ("ADA") based on attention deficit disorder, anxiety disorder, mood disorder, and chronic hypertension, which affect her vision, hearing, sleeping, concentration, thinking, blood circulation, communication, and working.  *Am. Compl.* [#5] at 2.  Among other claims, Plaintiff asserts discrimination on the basis of race, sex, and disability beginning in 2009 and lasting through the present, as follows.  *Id.*

On July 14, 2008, Plaintiff began working for Defendant United Launch Alliance, L.L.C. ("ULA") as a subcontract administrator.  *Id.*  She shared her first office, which was an enclosed space, with two program managers who were usually absent from the office due to travel obligations.  *Id.*  In early 2009, Plaintiff was moved to a cubicle on the third floor of her building.  *Id.*  A few months later, her manager, Al Sands ("Sands"), asked her to move back to the second floor to work from a cubicle in an area where Plaintiff had observed that the work environment was too noisy for her to work.  *Id.*  After the move, Plaintiff twice requested to move to spaces vacated by ULA employees who were leaving the company so that she could be away from noisier employees and closer to quiet ones.

*Id.* at 3. She was permitted to move each time without completing any forms or making formal written requests. *Id.* However, "[e]ven with the less boisterous office mates," Plaintiff worked many late night hours in order to complete work in a quieter environment, often leaving at midnight. *Id.*

In or about October 2010, Plaintiff was again moved to a noisier work area. *Id.* She was told by Mr. Sands and Human Resources Business Professional Lauren Otto ("Otto") that in order to be considered for a move back to a quieter workspace, Plaintiff must submit a Request for Reasonable Accommodation Form. *Id.* Plaintiff did so, and as part of this submission, Plaintiff's physician provided documentation informing Defendant ULA that Plaintiff should have a quiet work environment due to her disabilities. *Id.* The physician suggested that the best method to attain the necessary quiet environment was for Plaintiff to be in a closed office or to allow her to work from home half of the workday. *Id.* By January 2011, Defendant ULA had not granted Plaintiff an accommodation in accordance with her physician's suggestions. As a result, Plaintiff asked an Equal Employment Opportunity Commission ("EEOC") case worker to contact Ms. Otto. *Id.*

In February 2011, ULA contacted Plaintiff to set up a meeting with its Reasonable Accommodation ("RA") Committee. *Id.* ULA EEO Manager Rito Martinez ("Martinez") facilitated the meeting with Ms. Otto, Mr. Sands, and others, establishing that the only equipment and accommodations required for Plaintiff to perform the essential functions of her job were a computer and a telephone. *Id.* Regardless, later that month, the RA Committee determined that an accommodation would be provided to Plaintiff by seating her in another open space within the office, but in an area that had fewer immediately occupied cubicles and which therefore would be quieter than where she was then sitting. *Id.*

However, in the new location, there was a heavily-used, "noisy" copy machine and much foot traffic. *Id.*

On moving to a new building in October 2011, Plaintiff was located "next to" a teammate who spent a large amount of time loudly talking on the phone and "next to" a group whom Plaintiff claims was particularly boisterous. *Id.* In January 2012, Plaintiff experienced temporary blindness and dizziness at work, was diagnosed by her physician as having hypertension, and was put on short term disability ("STD") for the remainder of the month. *Id.* On January 30, 2012, Plaintiff submitted to ULA Medical a Return to Work Form, which contained a single medical requirement, i.e., a quiet work environment. *Id.* After receiving the form, ULA Medical called her and said she could not return to work until her medical restriction was resolved and she was cleared by ULA Medical. *Id.*

On February 15, 2012, Plaintiff met with ULA personnel to discuss how Defendant ULA might reasonably accommodate her asserted disabilities. At that meeting, Plaintiff asked for confirmation that she was still on paid leave, and she was assured that the paid leave would continue because the delay in her return to work was based on her employer's actions. *Id.* After the meeting, Plaintiff had difficulty contacting ULA Human Resources personnel, and so she sought advice by calling EEO Manager Martinez. *Id.* Plaintiff was directed to send an email to Mr. Martinez indicating that she wanted to return to work, and he stated that ULA would continue to seek a reasonable accommodation for her. *Id.* On March 1, 2012, Plaintiff filed an EEOC Charge asserting discrimination and retaliation primarily based on her belief that her employer was illegally failing to provide a reasonable accommodation for her disabilities. Plaintiff returned to work on March 6, 2012, without any accommodation. *Id.* Plaintiff believes she was coerced into returning without the

recognition of her medical restriction because she had been placed on unpaid leave of absence on or about February 21. *Id.* Plaintiff does not allege whether she actually lost any pay as a result of these circumstances.

On March 14, 2012, Defendant ULA arranged for Plaintiff to obtain a set of noise-cancelling headphones. On or about March 27, 2012, Plaintiff received and used the headphones, although Plaintiff complained that they amplified noises and were painful for Plaintiff to wear. *Id.* On April 9, 2012, ULA Manager Teri Sprague ("Sprague") gave Plaintiff the option of choosing a new headset, which she did, although the headphones were not provided to Plaintiff until August 9, 2012. *Id.* at 9. Ms. Sprague also stated that Plaintiff's surrounding workgroup would be instructed to be quieter, although Plaintiff complains that this never occurred or was never enforced. *Id.* In November 2012, Plaintiff was moved to a private office space. *Id.* In December 2012, Defendant Aguilera denied Plaintiff's request for external wi-fi access so she could listen to soft music and block the outside noise from other people. *Id.* Plaintiff concedes that the new office space was quiet, but only if a meeting was not being held in the room next to hers. *Id.* Plaintiff continues to work at her job for Defendant ULA, "although under continuing benighted circumstances as ULA continues to raise her level of discomfort in an effort to have her leave on her own." *Id.*

In the Amended Complaint [#5], Plaintiff asserts seven claims against Defendants: (1) ADA—Denial of Request to Provide Reasonable Accommodation; (2) Title VII—Discrimination—Race, Sex, Disability; (3) Title VII, ADA—Harassment/Hostile Environment; (4) Title VII, ADA—Retaliation; (5) Intentional Infliction of Emotional Distress ("IIED"); (6) Tortious Interference with Plaintiff's Economic Gain; and (7) Negligent

Misrepresentation. *Id.* at 10-12. In connection with these claims, Plaintiff "demands judgment against Defendants, as [their] liabilities may appear, awarding compensatory and punitive damages, as well as damages for Plaintiff's emotional distress as provided by law, together with interest, reasonable attorneys' fees, and the costs and disbursements of the action." *Id.* at 13.

## II. Standard of Review

### A.     Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited

jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B.    Fed. R. Civ. P. 12(b)(6) and 8(a)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary;

the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

"Under Rule 8, a plaintiff must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Tuttamore v. Lappin*, 429 F. App'x 687, 689 (10th Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2)). As with Rule 12(b)(6), "to overcome a motion to dismiss, a plaintiff's allegations must move from conceivable to plausible." *Id.* Indeed, "Rule 8(a)'s mandate . . . has been incorporated into the 12(b)(6) inquiry." *U.S. ex rel. Lemmon v. Envirocare of Utah*, 614 F.3d 1163, 1171 (10th Cir. 2010). Rule 8 enables "the court and the defendants to know what claims are being asserted and to determine how to respond to those claims." *Tuttamore*, 429 F. App'x at 689.

### III.  Analysis

**A.    Fed. R. Civ. P. 8**

Defendants assert that the Amended Complaint fails to comply with Fed. R. Civ. P.

8. *Motion* [#17] at 7-10.  Rule 8 requires "a short and plain statement of the claim"—"plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted," and "short because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it." *Carbajal v. City & Cnty. of Denver*, 502 F. App'x 715, 716 (10th Cir. 2012) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).  When a complaint fails to comply with these requirements, it is "not the district court's job to stitch together cognizable claims for relief from [a] wholly deficient pleading."  *Carbajal*, 502 F. App'x at 716 (quoting *Mann*, 477 F.3d at 1148).  Here, Plaintiff's rendition of allegations in the Amended Complaint is lengthy, primarily due to the inclusion of minute details that have little to do with her legal claims and do little to render those claims viable, instead serving as a litany of complaints about her employer's alleged ineptitude.  Nevertheless, the Court finds that the Amended Complaint is not so vague and confusing as to violate Rule 8(a).  Plaintiff has clearly identified the defendants in this matter, has made factual allegations against them (albeit replete with numerous conclusory statements), has stated the causes of action she brings, and has requested specific relief.  The Court therefore finds that Plaintiff has met the minimum mandates of Rule 8.

**B.     Sex Discrimination, Race Discrimination, and Hostile Work Environment**

Defendants assert that Plaintiff's claims of sex discrimination, race discrimination, and hostile work environment must be dismissed because Plaintiff failed to exhaust her administrative remedies.  *Motion* [#17] at 10-12.  Because Defendants essentially seek a ruling on whether the Court has subject matter jurisdiction over these claims in this action, the Court discusses these arguments first.  *See Herrara v. Alliant Specialty Ins. Servs.,*

*Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues presented in the motion").

"Under both Title VII and the ADA, exhaustion of administrative remedies is a prerequisite to suit." *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012). "[A] plaintiff's exhaustion of his or her administrative remedies is . . . jurisdictional . . . [and] not merely a condition precedent to suit." *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). "The failure to file an administrative Title VII [or ADA] claim before bringing suit is jurisdictionally fatal and requires dismissal pursuant to Fed. R. Civ. P. 12(b)(1)." *Underwood v. Geo Group, Inc.*, No. 10-cv-00306-LTB-KLM, 2010 WL 2653316, at *2 (D. Colo. June 30, 2010) (citing *Shikle*s, 426 F.3d at 1317). A plaintiff who invokes the court's subject matter jurisdiction "must allege in [her] pleadings the facts essential to show jurisdiction" and, if challenged, must support those allegations by a preponderance of the evidence. *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (quotation omitted); *see United States v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999).

Plaintiff submitted a Charge of Discrimination (the "Charge") and right-to-sue letter as undesignated exhibits to her Amended Complaint.[4] *Am. Compl.* [#5] at 14-17. With regard to Plaintiff's claim of sex discrimination, the Court agrees with Defendants that the

---

[4] Normally, when considering a motion to dismiss, the Court must disregard facts supported by documents other than the complaint unless the Court first converts the motion to dismiss into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a Court may consider documents outside of the complaint on a motion to dismiss in three instances. As relevant here, the Court may consider outside documents pertinent to ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000).

Charge does not adequately raise this issue. *See Motion* [#17] at 11. Plaintiff did not check the box on the form indicating that she was discriminated against on the basis of her sex, and the summary recitation of facts underlying the Charge provides no indication that she experienced any form of sex discrimination. *See Belcher v. Boeing Commercial Airplane Grp.*, 105 F. App'x 222, 227 (10th Cir. 2004) (affirming lack of jurisdiction over ADA and retaliation claims because "[a] party's failure to mark a box for a particular type of discrimination creates a presumption that the complainant is not asserting claims under those theories" and finding that the plaintiff "wrote nothing to suggest retaliation or disability discrimination" in the narrative portion of the administrative charge).

As for the claims of race discrimination and hostile work environment/harassment, Plaintiff combines the statement of facts in the Charge into one incident: "In 2009, I went to the Human Resources Director, Shellie Aguilera, about another employee who was harassing me because of my race. No action was taken to stop the harassment." *Am. Compl.* [#5] at 16-17. No other language in the Charge can be construed to support these claims. However, as applicable to this matter, a charge must be filed "within 300 days after the alleged unlawful practice occurred." 42 U.S.C. § 2000e–5 (e)(1). Plaintiff's Charge is undated but is stamped "Received" by the EEOC on March 1, 2012. *Am. Compl.* [#5] at 16. Three hundred days prior to the filing of Plaintiff's Charge was in May of 2011, and thus any events occurring in 2009 were not properly included in the Charge and were not timely exhausted. Further, any other events discussed by Plaintiff in her Amended Complaint that could potentially support claims of race discrimination or hostile work environment/harassment are not alluded to in the Charge, and thus are not properly exhausted either. The filing of a timely administrative claim is required under both Title VII

and the ADA, and a claim is time-barred if not filed within that period. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003). Thus, the Court agrees with Defendants that the Charge does not timely raise the issues of race discrimination and hostile work environment/harassment.

Accordingly, the Court **recommends** that Plaintiff's third claim for hostile work environment/harassment under Title VII and the ADA and the portions of Plaintiff's second claim under Title VII regarding race discrimination and sex discrimination be **dismissed without prejudice** for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

**C.     Retaliation Under Title VII and the ADA**

In connection with her retaliation claims, Plaintiff states in the March 1, 2012 Charge that Defendant Aguilera "is the person involved in my reasonable accommodation request now. The company is aware that I went to the EEOC for assistance in 2011 although I did not file a formal charge. I believe I am now being retaliated against for these actions." *Am. Compl.* [#5] at 17. The 2011 EEOC visit to which Plaintiff here refers is described in more detail in the Amended Complaint. Plaintiff states that "[i]n January 2011, Plaintiff had Ms. Otto contacted by an EEOC worker, indicating that ULA had not granted Plaintiff an accommodation and that she had been harmed by negative commentary as to her performance/disability in her December 2010, Performance Appraisal Reporting System

("PARS")." *Id.* at 4. Plaintiff further states that "ULA Human Resources did not inform ULA EEO Manager Rito Martinez that the EEOC had contacted ULA. ULA HR never told Plaintiff that ULA had an EEO Officer. Another employee made Plaintiff aware of Mr. Martinez' role." *Id.*

In the absence of direct evidence of discrimination, a plaintiff must allege the following to state a claim of retaliation under Title VII: "(1) [s]he engaged in protected activity; (2) [s]he suffered an adverse employment action; and (3) there is a causal connection between [her] protected activity and the adverse employment action." *Davis v. United Sch. Dist. 500*, __ F.3d __, __, 2014 WL 1758916, at *1 (10th Cir. May 5, 2014). To state a claim of retaliation under the ADA, a plaintiff must allege: "(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 988 (10th Cir. 2012). In the Title VII context, the United States Supreme Court has recently clarified the third element, stating that a plaintiff "must establish that . . . her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

A plaintiff has engaged in protected opposition to discrimination if she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII or the ADA. 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a). Here, there is no indication that Plaintiff "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." *Id.* In fact, she specifically states that, although she went to the EEOC in January 2011, she did not file an EEOC

charge at that time. *Am. Compl.* [#5] at 4, 17.

A plaintiff may also engage in protected opposition to discrimination if she "has opposed any practice made an unlawful employment practice" by Title VII or the ADA. 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a). Plaintiff makes no reference in the Charge to any category protected by Title VII, i.e., race, color, religion, sex, or national origin, in connection with her retaliation claims. She merely alleges that Defendant ULA did not grant her an accommodation under the ADA. *Am. Compl.* [#5] at 4. In connection with that type of claim, a plaintiff need only have a reasonable, good faith belief that she was disabled under the ADA and that the defendants' practices were unlawful. *See Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264-65 (10th Cir. 2001). Taking the allegations of the Amended Complaint as true, the Court finds that Plaintiff meets this element. *See Mobley*, 40 F.3d at 340. Thus, regardless of whether the denial of Plaintiff's request for an accommodation was actually a violation of the ADA, her conduct in contacting the EEOC in January 2011 is a protected act. *See id.*

With regard to the second element, an employer takes a materially adverse action if the action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kenfield v. Colo. Dep't of Pub. Health & Env't*, __ F. App'x __, __, 2014 WL 563588, at *3 (10th Cir. Feb. 14, 2014) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[T]he fact that an employee continues to be undeterred in . . . her pursuit of a remedy . . . may shed light as to whether the actions are sufficiently material and adverse to be actionable." *Kenfield*, 2014 WL 563588, at *3 (quoting *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008)). With regard to the third element, a causal nexus may be demonstrated by a plaintiff by alleging "close

temporal proximity between the protected activity and the retaliatory conduct" or other allegations of causation. *Kenfield*, 2014 WL 563588, at *3 (quoting *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181-82 (10th Cir. 2006)). Without additional material allegations of causation, a period of three or more months between the protected activity and the employer's adverse action is insufficient to demonstrate a causal connection. *Kenfield*, 2014 WL 563588, at *3 (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997)).

Plaintiff's Charge asserting retaliation was filed on March 1, 2012,[5] which was approximately 13-14 months after January 2011, when Defendant ULA was made aware that Plaintiff had contacted the EEOC. *Am. Compl.* [#5] at 4, 16. However, any alleged retaliatory conduct occurring more than 300 days before the Charge was filed is jurisdictionally barred. 42 U.S.C. § 2000e–5 (e)(1). The first allegedly retaliatory action Plaintiff specifies that falls within the 300-day window occurred in October 2011, approximately nine months after her contact with the EEOC. *Am. Compl.* #5] at 4. In fact, Plaintiff alleges no retaliatory action after February 2011 until October 2011, a gap of over seven months in which no retaliatory action is alleged. Thus, Plaintiff has not sufficiently alleged a causal connection between her contact with the EEOC and the alleged adverse

---

[5] The Court notes that any alleged retaliation occurring after the filing of the Charge cannot form the basis of Plaintiff's retaliation claim here because Plaintiff did not exhaust her administrative remedies regarding such retaliation. In other words, she did not file a second charge after the later-alleged conduct occurred. *See McDonald–Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1101-02 (holding that retaliatory action occurring after the filing of an EEOC charge could not form the basis of a retaliation claim unless the plaintiff filed a second EEOC charge complaining of such conduct) (citing *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) ("Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it.")). Thus, to the extent that Plaintiff may be attempting to assert that any other incident in the Amended Complaint forms the basis of her retaliation claim, it is jurisdictionally barred for failure to exhaust.

action because it occurred far outside the three-month period deemed sufficient by the Tenth Circuit Court of Appeals for meeting this element.

More importantly, however, and as more fully described in Section III.E. below, Plaintiff has failed to allege any viable adverse action taken against her by Defendant ULA. The adverse action alleged in October 2011 consisted of relocating Plaintiff "next to a teammate that spent a great deal of time loudly talking on the phone and next to the ULA Property Group who were particularly boisterous." *Am. Compl.* [#5] at 4. This does not constitute a materially adverse action under ADA jurisprudence. *See infra* § III.E. In short, Plaintiff has failed to allege that she has suffered retaliation that rises to the level of an adverse employment action, as required to state a claim for retaliation under the ADA.

Accordingly, the Court **recommends** that Plaintiff's claims of retaliation under Title VII and the ADA be **dismissed without prejudice** to the extent they are jurisdictionally barred and **dismissed with prejudice** to the extent they are not jurisdictionally barred. *See Brereton*, 434 F.3d at 1216-17; *Reynoldson v. Shillinger*, 907 F.2d 124, 127 (10th Cir. 1990) (stating that prejudice should attach to a dismissal if the plaintiff has not made allegations "which, upon further investigation and development, could raise substantial issues").

### D.  Disability Discrimination Under Title VII

In her second cause of action, Plaintiff brings a Title VII claim for disability discrimination. However, Title VII only makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2440 (2013) (quoting 42 U.S.C. § 2000e–2(a)(1)). Title VII does not provide a cause of action for disability discrimination. *See Hooten v. Ikard Servi Gas*, 525 F. App'x 663, 666 (10th Cir. 2013). Here, Plaintiff has separately brought claims under the ADA. *See Am. Compl.* [#5] at 10-11. Thus, Plaintiff's attempt to bring a disability discrimination claim under Title VII as well is improper. Accordingly, the Court **recommends** that Plaintiff's claim for disability under Title VII be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

**E.  ADA Claim**

Plaintiff's remaining federal claim is brought under the ADA for Defendants' alleged denial of Plaintiff's request to provide reasonable accommodation. *Am. Compl.* [#5] at 10. "To state a prima facie case for discrimination under the ADA, [Plaintiff] must establish that: (1) she is disabled; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of her job; and (3) her employer discriminated against her because of her disability." *White v. Oklahoma*, __F. App'x__, __, 2014 WL 292448, at *8 (10th Cir. Jan. 28, 2014) (quoting *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1216 (10th Cir. 2012); *Taylor v. Pepsi–Cola*, 196 F.3d 1106, 1109 (10th Cir. 1999)). To meet the third element and demonstrate "discrimination," a plaintiff generally must allege that she has suffered an "adverse employment action because of the disability." *Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001).

> The Tenth Circuit has liberally defined the phrase "adverse employment action," and takes a case-by-case approach, examining the unique factors relevant to the situation at hand. In general, only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an

>adverse employment action. However, the term "adverse employment action" is not necessarily limited to such acts. But although the term is not confined to, for example, monetary losses in the form of wages or benefits, a mere inconvenience or an alteration of job responsibilities does not constitute an "adverse employment action." Accordingly, a plaintiff must show that the alleged adverse action caused more than "de minimis harm" to or a "de minimis impact" upon an employee's job opportunities or status.

*E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (internal citations and quotations omitted).

Here, Plaintiff has failed to allege an adverse employment action. As required under ADA jurisprudence, Plaintiff must allege that she suffered an adverse impact or effect in relation to her employment opportunities or status. *Id.* at 1042. Plaintiff has not alleged that she was demoted, reassigned, or refused a promotion. *See id.* She has not alleged that her job responsibilities, duties, or compensation were changed. *See id.* She has not alleged that her opportunities and status were limited in any way. *See id.* Further, she has not alleged that Defendants' actions "carr[ied] a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Id.* (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)). Rather, Plaintiff alleges that Defendants have engaged in a number of meetings with her in order to find a reasonable accommodation for her alleged disabilities. Although she alleges that Defendants' accommodations have been unsatisfactory due to holes in the wall of her private office, obsolete furniture, and inconsistent noise disturbances, she makes clear that Defendant ULA has moved her to quieter work areas, instructed her coworkers to be quiet, provided her with two different sets of noise-cancelling headphones, and provided her with a private office. In short, Plaintiff has failed to allege that she has suffered discrimination that rises to the level of an adverse employment action, as required to state a claim for discrimination

under the ADA.

Accordingly, the Court **recommends** that Plaintiff's first cause of action for failure to provide a reasonable accommodation under the ADA be **dismissed with prejudice**. *See Reynoldson*, 907 F.2d at 127.

## F.     Supplemental Jurisdiction

Plaintiff's remaining claims—IIED, tortious interference with economic gain, and negligent misrepresentation—sound in state law. These are claims which "[f]ederal law neither created . . . nor is federal law a necessary element of [them]." *Tinner v. Farmers Ins. Co.*, 504 F. App'x 710, 714 (10th Cir. Dec. 4, 2012) (citation and quotation omitted). Here, subject matter jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See Am. Compl.* [#51] at 1-2. Plaintiff does not plead any basis for diversity jurisdiction and it appears from Plaintiff's allegations that Plaintiff and both Defendants are residents of the State of Colorado. *Id.* As a result, in order to consider the remaining claims, the Court must exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The exercise of supplemental jurisdiction "is within a district court's discretion." *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. June 24, 2013). Pursuant to 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *See Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1236 (10th Cir. 1998) (stating that once "the bases for federal subject matter jurisdiction have been extinguished . . . , the district court may decline to exercise continuing pendant or supplemental jurisdiction over plaintiff's state claims"). Thus, having recommended

dismissal of Plaintiff's federal claims, the Court further **recommends** that the District Judge decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and that such claims be **dismissed without prejudice**.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion be [#17] **GRANTED** and that the Amended Complaint [#5] be **DISMISSED with prejudice in part** and **DISMISSED without prejudice in part**, as outlined above.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:

Dated:  May 23, 2014

Kristen L.  Mix
United States Magistrate Judge